UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MANDEEP NO NAME,

Petitioner,

v.

CHRISTOPHER CHESTNUT, *et al*.,

Respondents.

Case No. 1:26-cv-06224 (VC)

**ORDER GRANTING APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ENTERING PRELIMINARY INJUNCTION**

Re: Dkt. No. 2

Petitioner filed a Petition for Writ of Habeas Corpus and a Motion for Temporary Restraining Order ("TRO") seeking release from the custody of U.S. Immigration and Customs Enforcement ("ICE"). Dkt. Nos. 1, 2. On August 7, 2026, the Court ordered Respondents to file a response to the TRO, and directed them to indicate whether they opposed the conversion of the motion to one for a preliminary injunction. *See* Dkt. No. 7. As Respondents did not oppose such conversion, and the standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction, the Court converts Petitioner's TRO to a preliminary injunction and orders Respondents to immediately release Petitioner. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

Petitioner raises claims that are functionally identical to those this Court, and many others within this district, have already addressed in prior orders. Fleeing India, Petitioner entered the United States on September 1, 2024 and was taken into custody by the Department of Homeland Security ("DHS"). Dkt. No. 1 ¶¶ 31–32. In October 2024, Petitioner was released from custody on his own recognizance and placed in removal proceedings. *Id.* ¶¶ 2, 33. After his release, Petitioner began living in Sacramento, California with his cousin, started working pursuant to a

valid work permit issued by USCIS, and applied for asylum. *Id*. ¶¶ 34, 36. In June 2023 ICE officers detained Petitioner. *Id*. ¶ 41.

Many prior orders within this district are dispositive on the issues raised in the Petition and motion for a temporary restraining order. *See, e.g.*, *Alauddin v. Chestnut*, No. 1:26-CV-03541 (AMO), 2026 WL 1346863 (E.D. Cal. May 14, 2026); *Ozturk v. Lyons*, No. 1:26-CV-03484 (VC), 2026 WL 1354540 (E.D. Cal. May 14, 2026); *Zheng v. Warden*, No. 1:26-CV-03533 (EJD), 2026 WL 1354477 (E.D. Cal. May 14, 2026). For the reasons stated in those cases, Petitioner has shown a strong likelihood of success on his due process claim (count 1). Respondents did not provide Petitioner with notice and an opportunity to be heard, as required by the Fifth Amendment Due Process Clause, prior to revoking his release. Petitioner has a clear liberty interest in his continued freedom. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Applying the balancing test described in *Mathews v. Eldridge,* 424 U.S. 319 (1976), and for the reasons identified in the Courts' prior orders, the Court finds that Petitioner has a substantial private interest in maintaining his out-of-custody status, the risk of erroneous deprivation here is considerable, and Respondents' interest in detention is low as the effort and costs required to provide Petitioner with procedural safeguards are minimal.

Respondents only argument in response to the TRO is that Petitioner may be mandatorily detained under 8 U.S.C. § 1225(b)(2), and, alternatively, may seek a custody redetermination hearing pursuant to 8 U.S.C § 1226(a). Dkt. No. 8 at 1. As Respondents acknowledge in their brief, application of § 1225(b)(2)(A) to noncitizens, like Petitioner, who are arrested in the interior of the country is unlawful pursuant to *Rodriguez Vazquez v. Bostock*, 2026 WL 2196424 (9th Cir. July 30, 2026). Moreover, provision of a custody redetermination hearing under § 1226(a) would not cure the due process violation here. "[E]ven when an initial decision to detain or release an individual is discretionary, the government's subsequent release of the individual from custody creates 'an implicit promise' that the individual's liberty will be revoked only if they fail to abide by the conditions of their release." *Calderon v. Kaiser*, No. 25-CV-6695 AMO, 2025 WL 2430609, at *2 (N.D. Cal. Aug. 22, 2025) (quoting *Morrissey*, 408 U.S. at 482); *see*

*also Enriquez Escarcega v. Warden of the Golden State Annex Facility*, No. 1:26-CV-01012 DAD SCR, 2026 WL 480500, at *2 (E.D. Cal. Feb. 20, 2026) (noting that the court "need not determine whether § 1225 or § 1226 applies in this case because petitioner has a liberty interest in his continued release regardless of the applicable detention scheme"); *Cajina v. Wofford*, No. 1:25-CV-01566-DAD-AC (HC), 2025 WL 3251083, at *3 (E.D. Cal. Nov. 21, 2025) (same).

Petitioner has also made a sufficient showing as to the other factors that the Court must consider before granting a preliminary injunction. Unconstitutional deprivation of physical liberty constitutes irreparable harm. *See Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017). As for the balance of equities and the public interest factors of the TRO inquiry, these factors merge when the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). This inquiry favors the Petitioner because the potential harm to him from detention is significant, and the Government at most faces a short delay in detaining Petitioner if it ultimately demonstrates that detention is necessary to prevent flight or danger to the community.

Accordingly, the Court ORDERS Respondents to immediately release Petitioner from their custody. If the Government seeks to re-detain Petitioner, it must provide no less than seven (7) days' notice and hold a pre-deprivation bond hearing before a neutral arbiter at which the Government must show by clear and convincing evidence that Petitioner is a flight risk or danger to the community such that his physical custody is legally justified.

By September 8, 2026, Respondents are orders to show cause, in writing, why the petition for writ of habeas corpus should not be granted. Petitioner may file a reply by September 17, 2026.

**IT IS SO ORDERED.**

Dated: August 18, 2026

VINCE CHHABRIA
United States District Judge